**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| DEVON KUNZ | Civil Action No.: |
| Plaintiff, | |
| v. | **COMPLAINT** |
| | **DEMAND FOR JURY TRIAL** |
| BEACH AND BOURBON LBI LLC d/b/a AZZURRI ITALIAN CUCINA, KIM DIDONATO, DANIEL DIDONATO, ANTHONY GENTILELLA, JOHN DOES 1 through 10, and ABC CO. 1 through 10, | |
| Defendants. | |

## STATEMENT OF THE CASE

1.      Plaintiff by and through her counsel, the Law Offices of Thomas H. Andrykovitz, P.C., and the Law Offices of Jeffery E. Goldman, brings claims for discrimination, sexual harassment, hostile work environment, retaliation, and sexual assault against Beach and Bourbon LBI LLC d/b/a Azzurri Italian Cucina, Kim DiDonato, Daniel DiDonato, Anthony Gentilella, John Does 1 through 10, and ABC CO. 1 through 10.

2.      This action arises from a workplace culture of sexual harassment, degradation, and indifference that Defendants allowed to flourish at Azzurri Italian Cucina, a restaurant owned and operated by Defendants Beach and Bourbon LBI LLC and its principals, Kim and Daniel DiDonato. Rather than maintain a workplace free from discrimination and harassment, as required by the New Jersey Law Against Discrimination ("NJLAD"), Defendants fostered and tolerated a

1

sexually charged environment where female employees were objectified, humiliated, and treated as targets of routine sexual misconduct.

3.    From the outset, Plaintiff entered a workplace that lacked even the most basic safeguards against harassment. Defendants failed to provide sexual harassment training, failed to maintain meaningful reporting procedures, and failed to maintain or enforce any effective anti-harassment policies. Instead, management actively contributed to an atmosphere where employees' romantic lives were openly speculated about and discussed, often through messages circulated among staff that relied on security camera footage to gossip about employees' relationships.

4.    Within this environment, Defendant Anthony Gentilella, the Restaurant's head chef, subjected Plaintiff to relentless sexual harassment. Gentilella routinely made sexually explicit propositions, demanded sexually suggestive photographs, and verbally degraded Plaintiff with gender-based insults. His conduct escalated further when he repeatedly struck and flicked Plaintiff's breasts during work shifts, acts of physical sexual assault that occurred openly in the workplace and in the presence of other staff. Despite the obvious nature of this misconduct, Defendants failed to intervene or meaningfully discipline Gentilella.

5.    Plaintiff repeatedly complained to management about Gentilella's conduct and the increasingly hostile environment at the Restaurant. Rather than address these complaints, management dismissed them. Plaintiff's supervisor trivialized the misconduct as "jokes" and suggested that Plaintiff simply endure the behavior. Defendant Kim DiDonato likewise ignored Plaintiff's complaints of sexual harassment and a hostile work environment, and instead participated in spreading humiliating rumors about Plaintiff's supposed romantic involvement with coworkers.

6.      The environment Defendants permitted to develop, one where sexual comments, humiliation, and physical misconduct were normalized, ultimately culminated in a far more serious assault. On October 5, 2025, after most employees had left the Restaurant, a dishwasher employed by Defendants physically attacked Plaintiff inside the Restaurant, grabbing her breasts and attempting to drag her into a bathroom. Plaintiff managed to escape only by physically fighting off her attacker and fleeing the premises in a state of shock and panic.

7.      Rather than support Plaintiff after she reported this assault, Defendants responded with pressure and retaliation. While Plaintiff struggled with the immediate trauma of the attack, Defendants repeatedly demanded that she return to work within days of the incident. When Plaintiff sought time to recover from the assault she suffered at their workplace, Defendants terminated her employment.

8.      Defendants' conduct reflects a profound failure to protect employees from sexual harassment and assault and a conscious disregard for the legal protections guaranteed under New Jersey law. Through their actions and omissions, Defendants created and perpetuated a hostile work environment, aided and abetted discriminatory conduct, and retaliated against Plaintiff for reporting unlawful behavior.

9.      As a direct result of Defendants' unlawful conduct, Plaintiff has suffered severe emotional distress, humiliation, anxiety, and lasting psychological harm. Plaintiff now brings this action to hold Defendants accountable for their violations of the New Jersey Law Against Discrimination and the Conscientious Employee Protection Act, and to obtain redress for the profound harm inflicted upon her.

10.    Plaintiff seeks all available relief under the NJLAD and CEPA, including compensatory damages, emotional distress damages, punitive damages, attorneys' fees and costs, and such other relief as this Court deems just and proper.

**PARTIES**

11.    Plaintiff Devon Kunz ("Plaintiff" or "Ms. Kunz") is an adult female who resides in the Commonwealth of Pennsylvania.

12.    Plaintiff, at all times relevant hereto, was a "person" and an "employee" entitled to protections of the relevant statutes herein.

13.    At all times relevant, Plaintiff performed service for, and was under the control and direction of her employers, as identified herein, for wages.

14.    Defendant Beach and Bourbon LBI LLC d/b/a Azzurri Italian Cucina (the "Restaurant"), at all times relevant herein, employed Plaintiff and is registered to do business in New Jersey, and located at 8001 Long Beach Boulevard, Harvey Cedars, New Jersey 08008.

15.    Beach and Bourbon LBI LLC is identified as the employer on the paystubs issued to Plaintiff during Plaintiff's employment.

16.    Defendant Kim DiDonato ("Defendant Kim" or "Kim"), at all times relevant herein, was Plaintiff's employer, supervisor, and an owner of the Restaurant.

17.    Defendant Kim is a resident of the State of New Jersey.

18.    Defendant Daniel DiDonato ("Defendant Daniel" or "Daniel"), at all times relevant herein, was Plaintiff's employer, supervisor, and an owner of the Restaurant.

19.    Defendant Daniel is a resident of the State of New Jersey.

20.    At all times relevant, Defendant Daniel and Defendant Kim are married.

21.     Defendant Anthony Gentilella ("Defendant Gentilella" or "Gentilella"), at all times relevant herein, was employed as Head Chef of the Restaurant.

22.     Defendant Gentilella is a resident of the State of New Jersey.

23.     At all times relevant herein, John Does 1 through 10 were Plaintiff's coworkers, employers, supervisors, and/or owners of the Restaurant for purposes of the NJLAD and CEPA and were authorized to affect or make tangible employment decisions regarding Plaintiff and/or authorized to make decisions about Plaintiff's day-to-day work activities, including decisions related to, *inter alia*, Plaintiff's working conditions, promotional opportunities, and compensation.

24.     Defendants ABC CO. 1 through 10 are fictitious entities, the identities of which are unknown at present, but that are liable to Plaintiff by reason of their knowing and joint participation in each and every illegal action taken against Plaintiff, pursuant to the doctrine of *respondeat superior*, or that are otherwise responsible to Plaintiff for the wrongful conduct referred to herein.

25.     At all times relevant hereto, Defendants Kim, Daniel, Gentilella, John Does 1 through 10, and ABC CO. 1 through 10 (collectively "Defendants") were Plaintiff's employers for the purposes of the NJLAD. At all times relevant hereto, Defendants were the employers of Plaintiff, and were responsible for the overall investigation, selection, hiring, training, retention, and accountability of all persons employed or otherwise authorized to act on behalf of the Restaurant.

## JURISDICTION AND VENUE

26.     This Court has jurisdiction of Plaintiff's claims pursuant to U. S. C. § 1332, as the case involves diversity of citizenship, between Plaintiff and all Defendants, where the amount in controversy exceeds $75,000.

27. This Court has diversity jurisdiction over the claims set forth herein because Plaintiff is a resident of the Commonwealth of Pennsylvania, Defendants are residents of the State of New Jersey, the amount in controversy exceeds $75,000, and the events transpired in State of New Jersey, County of Ocean.

28. Defendants are domiciled and/or conduct substantial operation/business in the State of New Jersey. Moreover, the subject incident which gave rise to the violations occurred in the State of New Jersey, County of Ocean, rendering the District of New Jersey an appropriate venue pursuant to 28 U.S.C. § 1391.

29. Venue is proper in, and Defendants are the personal jurisdiction of, this Court because Defendants maintain facilities and business operations in this District. 28 U.S.C. § 1391(b); 42 U.S.C. § 2000e-5(f) (3).

30. Plaintiff brings a cause of action to redress a hostile work environment, sexual harassment, sexual assault, and retaliation pursuant to N.J.S.A. 10:5-1 *et seq.* ("NJLAD"), as more fully set forth herein.

31. Plaintiff brings a cause of action to redress retaliation pursuant to N.J.S.A. § 34:10-1 et seq. ("CEPA"), as more fully set forth herein.

## STATEMENT OF FACTS

32. In or around July 2024, Plaintiff applied for a job at the Restaurant.

33. Plaintiff was told during her interview that Kim and Daniel DiDonato were the primary owners of the Restaurant.

34. On or about July 5, 2024, Defendants hired Plaintiff as a host.

35. Plaintiff immediately began working without any formal training. The only training Plaintiff received was on the Payment Operating System ("POS").

36.     On or about August 1, 2024, the Restaurant opened to the public.

37.     Plaintiff worked extensive hours, typically from 2:00 p.m. to 12:00 a.m. nearly every day. The staff would set up the Restaurant for service, have a group meal for roughly 30 minutes, and then begin service.

38.     Kim and Daniel directly supervised the regular operation of the Restaurant.

39.     Kim regularly texted Plaintiff on her personal cellphone commanding her to perform work duties, such as organizing marketing posts to social media sites, reaching out to guests, and coordinating events, such as the "LBI Girlfriends."

40.     Kim regularly commanded Plaintiff to call her, even while not at work, to speak about work related duties.

41.     Kim, Daniel, and other owners frequently watched the Restaurant through the security cameras while they were off-site.

42.     Kim and Daniel conducted weekly meetings with the entire staff of the Restaurant to discuss business operations, meal specials, and other news or events regarding the Restaurant.

43.     During these meetings, Kim would also ask employees personal questions, such as their romantic interests and "who liked who."

44.     At various times, Kim, Daniel, or another owner would share screenshots of the security footage to the Restaurant's entire staff in an iMessage chat, speculating which staff members may be in a relationship or otherwise romantically involved.

45.    By September 2024, Plaintiff noticed a growing unfriendliness between front-of-house[1] staff and back-of-house[2] staff. The primary aggravators were Defendant Gentilella and Joaquin Agnes ("Joaquin"), who both worked in back-of-house.

46.    In or around September 2024, Gentilella would frequently and casually shout racial and homophobic slurs, ask fellow staff members invasive and uncomfortable questions about their sexual habits, and make sexually explicit and demeaning comments, disguised as jokes, about women working at the Restaurant. Specifically, Gentilella would ask Plaintiff to enter the walk-in freezer with him to perform sexual acts and propose "threesomes" with Plaintiff while she was working. Gentilella also openly discussed cheating on his girlfriend, and stated that he wanted to cheat on his girlfriend with Plaintiff.

47.    At no point during Plaintiff's employment did management or Defendants require any sort of sexual harassment training.

48.    Defendants did not hand or send out any periodic publications of an anti-harassment policy.

49.    The Restaurant did not maintain or distribute an employee handbook, any written or oral sexual harassment policy, or implement an effective or practical grievance process.

50.    Defendants did not provide any training sessions for workers, supervisors, or managers about how to recognize and eradicate unlawful harassment.

51.    In or around the Winter of 2024, Gentilella's behavior escalated. Gentilella began smacking and flicking Plaintiff's breasts with the back of his hand during her shifts. Gentilella continued this assault on a daily basis, in front of other staff and management, without repercussion

---

[1] "Front-of-house" staff refers to customer facing employees, such as hosts, servers, managers, and bussers.
[2] "Back-of-house" staff refers to staff that work primarily in the kitchen, or non-customer facing areas of the Restaurant.

8

or reprisal. Gentilella would frequently laugh openly about this perverted and humiliating invasion of Plaintiff's person, and continue to make demeaning comments about engaging in sexual acts with Plaintiff, disguised as jokes. For example, Gentilella said "if this were Game of Thrones, [Gentilella] would make [Plaintiff] strip naked when [Gentilella] is mad at [Plaintiff]." Gentilella would also ask Plaintiff to send him photos, while she was at work, so that he could masturbate to them.

52. Gentilella offered to send Plaintiff photos and/or videos of him masturbating.

53. Gentilella began to verbally degrade Plaintiff by calling her objectively offensive names such as "bitch," "whore," "worthless," and other degrading and humiliating names using a manner and tone that conveyed the demeaning sexual nature of the epithets. This occurred so often that this destructive language became a regular aspect of Plaintiff's employment.

54. In or around March of 2025, Blase Clay ("Blase") was hired as the Restaurant's General Manager. He was Plaintiff's supervisor.

55. Beginning in the Summer of 2025, Plaintiff began to complain to Blase on many occasions about Gentilella's sexual harassment and the sexually charged atmosphere that permeated the Restaurant.

56. Blase was dismissive of Plaintiff's complaint. For example, Blase told Plaintiff, "if you want to make jokes, you have to take jokes," and then said, "if you can't take the heat, then stay out of the kitchen." Plaintiff was humiliated and discouraged by management ignoring her complaints of sexual harassment or hostile work environment.

57. In or around June of 2025, Kim began spreading a rumor that Plaintiff was in a romantic relationship with Joaquin Agnes, who is part of the kitchen staff. Devon was told that

9

Kim was circulating this rumor amongst the owners by Alexandria Petrullo ("Alexandria"), who is the daughter of one of the owners.

58. Around this time, Plaintiff repeatedly complained to Kim about the sexual harassment she experienced in the Restaurant.

59. Shortly after the rumor began circulating, Plaintiff directly confronted Kim about spreading the humiliating rumor. Plaintiff told Kim that this false accusation made her exceedingly uncomfortable, especially considering the sexual atmosphere she was already struggling to navigate in the Restaurant. Kim dismissed Plaintiff's complaint, stating that "when kids are all in the same place, these things happen" and stated that her belief was based on the "vibe" she picked up from watching the Restaurant through security cameras. Plaintiff was shocked that Kim, an adult woman, was speculating on and circulating rumors of Plaintiff's alleged sexual interactions with her coworkers.

60. Plaintiff was discouraged and humiliated at Blase and Kim's responses to her complaints, and feared that any further complaints would result in shame and personal embarrassment.

61. On or about June 15, 2025, Plaintiff complained to Defendant Gentilella about his inappropriate and demeaning behavior. Plaintiff texted Defendant Gentilella, in regard to his sexually charged comments, and said, "I know you think it's funny or whatever but you keep saying it and I want you to know it hurts my feelings. You're actively making me feel like shit, first time I let it go and told you how it felt and then you do it again so it's kinda crazy."

62. Plaintiff did not receive a meaningful response to her complaint.

63. On or about July 24, 2025, Defendant Kim acknowledged Defendant Gentilella's harassing behavior. Defendant Kim sent a text message to Plaintiff stating, "I am so sorry to hear

10

that Anthony was screaming at you and the staff last night. Totally unacceptable ! We will talk in the morning with him and make sure it never happens again. This is not the culture we want to create." Upon information and belief, Defendant Gentilella was not reprimanded for his demeaning behavior, and the conduct received no meaningful response.

64.    On or about October 5, 2025, Plaintiff was in the Restaurant working her normal shift. At approximately 8:36 p.m., Blase left the Restaurant. At approximately 9:30 p.m., all kitchen staff left the Restaurant, other than a dishwasher known as "Davide."

65.    Davide was employed by Defendants for approximately one year from October 2024 to October 2025. Kim and Daniel allowed him to live in a room located above the Restaurant.

66.    While Plaintiff was performing closing duties, Davide crept up behind Plaintiff and grabbed her breasts from behind. Plaintiff wrenched out of Davide's grasp, objected, and moved away by quickly walking through the kitchen to grab her personal belongings and lock the front door before leaving.

67.    Believing that Davide had left, Plaintiff turned back to shut off the lights. Davide again approached Plaintiff from behind and grabbed her breasts, and began dragging her into the bathroom. Filled with shock and horror, Plaintiff wrestled out of Davide's arms and fled out the back door of the Restaurant.

68.    Plaintiff ran until she reached her vehicle, where she immediately called Alexandria. Plaintiff told Alexandria over the phone what had just happened to her. Plaintiff experienced extreme levels of shock and panic, including difficulty breathing, shaking, and sobbing. Because of these immediate symptoms, Plaintiff was unable to drive herself home. Alexandria contacted Joaquin and another chef at the Restaurant known as "Ruby." Ruby picked

11

up Plaintiff from the Restaurant's parking lot and took her to her home, where Plaintiff stayed overnight with Ruby.

69. Joaquin arrived at the Restaurant shortly after Plaintiff's departure and fired Davide.

70. Davide appeared empowered to assault Plaintiff because of the sexual harassment that Defendants allowed to take root at the Restaurant, where he watched male coworkers humiliate and degrade Plaintiff on a daily basis, and where Gentilella routinely touched Plaintiff's breasts without her consent, without repercussion or reprisal. The consistent harassment of Plaintiff told Davide that Plaintiff was considered "fair game" around the Restaurant, and that touching Plaintiff's breasts without her consent was acceptable behavior.

71. Davide was not authorized to work in the United States. Daniel and Kim were harboring Davide in the upstairs portion of the Restaurant, which was not zoned or approved for housing, where he had unfettered access to the Restaurant and its staff.

72. Upon information and belief, Plaintiff was not Davide's first victim, and Daniel and Kim knew of his dangerous propensities. Davide had previously harassed a female server who went by "Kaylee" by stalking her on social media, sending her text messages about her appearance, and making sexual comments to her in the Restaurant. Following Davide's harassment, Kaylee was forced to resign for her own wellbeing and safety after her complaints were not addressed.

73. The following morning, Blase called Plaintiff to inquire about the attack. After asking several questions about the incident, Blase asked Plaintiff to take their call off speakerphone. Blase then said to Plaintiff that he "wished he had taken [Plaintiff's] prior complaints about [Gentilella] seriously." Plaintiff told Blase that she would not be returning to work immediately because she needed time to recover.

74. Following this call, Plaintiff began to receive numerous texts from Kim and Daniel regarding when she would be returning to work. Plaintiff continually told them, and Blase, that she needed some time off to recover because she was the victim of a sexual assault and attempted rape that had occurred only a day prior.

75. Still, Kim and Daniel continued to hound Plaintiff to return to work. Plaintiff was especially confused because the Restaurant was in the "slow season" where the Restaurant was only open five (5) days a week and operated on a smaller staff with shorter hours.

76. Several days after the attack, Plaintiff's father, Ed Kunz ("Mr. Kunz") spoke with Daniel over the phone to address the Restaurant's persistent messages to Plaintiff about her return. During this phone call, Daniel got flustered and angry, and Mr. Kunz repeatedly told him that Plaintiff was not ready to return at the present moment.

77. After this phone call, Plaintiff received a termination notice by mail on October 23, 2025. The letter stated that the Restaurant made "several attempts to contact [Plaintiff] in recent weeks" and had not received any response. Plaintiff was astounded that she had been fired for reporting the sexual assault she experienced at the Restaurant, and falsely accused of ignoring the Restaurant's attempts to speak to her.

78. Since the attack, Plaintiff has experienced ongoing symptoms of anxiety, shock, and shortness of breath. Plaintiff has also experienced significant anxiety, depression, and internal disturbance related to the harassing and demeaning workplace culture at the Restaurant, which ultimately empowered Davide to assault her.

**COUNT I**
**SEXUAL HARASSMENT IN VIOLATION OF NEW**
**JERSEY LAW AGAINST DISCRIMINATION (N.J.S.A.**
**10:5-1 *et seq.*) AGAINST ALL DEFENDANTS**

13

79. Plaintiff repeats and reiterates all of the allegations contained in preceding paragraphs as if set forth at length herein.

80. Plaintiff's protected trait is her sex.

81. Throughout her employment, Plaintiff was the subject of incessant harassment, degradation, and sexual assault because of her protected trait.

82. The harassment set forth herein would not have occurred but for Plaintiff's protected trait.

83. All of the harassment claimed herein was continuous, regular, and ongoing such that it is all actionable under the continuing violation doctrine.

84. The Restaurant, by and through its agents Kim, Daniel, and Gentilella created and/or fostered a discriminatory and harassing atmosphere and/or allowed actions which consisted of harassment based on protected traits in violation of the NJLAD.

85. Defendants had a duty to exercise due care with respect to sexual harassment in the workplace.

86. Defendants knew of the harassment but failed to take prompt, appropriate, and/or reasonable remedial measures to prevent, stop, and remedy the harassment, hostile work environment, and discrimination aimed at Plaintiff, breaching Defendants' duty to prevent and stop sexual harassment.

87. The Restaurant, Kim, and Daniel delegated to Gentilella the authority to control the working environment and Gentilella used that authority to create a hostile working environment.

88. The authority delegated by Defendants to Gentilella aided in injuring Plaintiff.

89.    The aforesaid acts of harassment based on Plaintiff's protected trait, perpetrated by the Restaurant, Kim, Daniel, and Gentilella, violated Plaintiff's rights under the NJLAD and damaged Plaintiff.

90.    The Restaurant and ABC CORPS. 1 through 10 have *respondeat superior* liability for the acts of the Restaurant, Kim, Daniel, Gentilella, and John Does 1 through 10, and others acting on behalf of the Restaurant.

91.    As a direct and proximate result of this injury from Defendants, Plaintiff has suffered and is suffering considerable injury, including but not limited to emotional distress arising from the trauma she endured because of Defendants' conduct, which caused her to suffer humiliation, embarrassment, and indignity arising from the discriminatory conduct of Defendants' and/or agents' and/or employees' actions on behalf of Defendants, and the stress, anxiety, and physical harm caused by the same.

**WHEREFORE**, Plaintiff respectfully requests Judgement in her favor and against all Defendants, jointly, severally and in the alternative, together with compensatory damages, emotional distress damages, non-economic compensatory damages, punitive damages, interest, costs of suit, attorneys' fees, enhanced attorneys' fees, and any other relief the Court deems equitable and just.

## COUNT II
### HOSTILE WORK ENVIRONMENT IN VIOLATION OF
### NEW JERSEY LAW AGAINST DISCRIMINATION
### (N.J.S.A. 10:5-1 *et seq*.) AGAINST ALL DEFENDANTS

92.    Plaintiff repeats and reiterates all of the allegations contained in preceding paragraphs as if set forth at length herein.

93.    Plaintiff's protected trait is her sex.

15

94.     Throughout her employment, Plaintiff was the subject of incessant harassment, degradation, and sexual assault because of her protected trait.

95.     The harassment set forth herein would not have occurred but for Plaintiff's protected trait.

96.     All harassment described herein was sufficiently severe or pervasive enough to make a reasonable person in Plaintiff's position believe that the conditions of employment were altered, and the working environment was intimidating, hostile, or abusive, and Plaintiff's employment was so altered.

97.     All harassment described herein unreasonably interfered with Plaintiff's ability to do her job.

98.     All of the harassment claimed herein was continuous, regular, and ongoing such that it is all actionable under the continuing violation doctrine.

99.     The Restaurant, by and through its agents Kim, Daniel, and Gentilella created and/or fostered a discriminatory and harassing atmosphere and/or allowed actions which consisted of harassment based on protected traits in violation of the NJLAD.

100.    Defendants had a duty to exercise due care with respect to sexual harassment in the workplace.

101.    Defendants knew of the harassment but failed to take prompt, appropriate, and/or reasonable remedial measures to prevent, stop, and remedy the harassment and hostile work environment aimed at Plaintiff, breaching Defendants' duty to prevent and stop sexual harassment.

102.    The Restaurant, Kim, and Daniel delegated to Gentilella the authority to control the working environment and Gentilella used that authority to create a hostile working environment.

103.    The authority delegated by the Restaurant to Gentilella aided in injuring Plaintiff.

16

104. The aforesaid acts of harassment based on Plaintiff's protected trait, perpetrated by the Restaurant, Kim, Daniel, and Gentilella, violated Plaintiff's rights under the NJLAD and damaged Plaintiff.

105. The Restaurant and ABC CORPS. 1 through 10 have respondeat superior liability for the acts of the Restaurant, Kim, Daniel, Gentilella, and John Does 1 through 10, and others acting on behalf of the Restaurant.

106. As a direct and proximate result of this injury from Defendants, Plaintiff has suffered and is suffering considerable injury, including but not limited to emotional distress arising from the trauma she endured because of Defendants' conduct, which caused her to suffer humiliation, embarrassment, and indignity arising from the discriminatory conduct of Defendants' and/or agents' and/or employees' actions on behalf of Defendants, and the stress, anxiety, and physical harm caused by the same.

**WHEREFORE**, Plaintiff respectfully requests Judgement in her favor and against all Defendants, jointly, severally and in the alternative, together with compensatory damages, non-economic compensatory damages, punitive damages, interest, costs of suit, attorneys' fees, enhanced attorneys' fees, and any other relief the Court deems equitable and just.

**COUNT III**
**AIDING AND ABETTING DISCRIMINATORY**
**CONDUCT (N.J.S.A. 10:5-1 *et seq*.) AGAINST**
**DEFENDANTS KIM, DANIEL, AND THE**
**RESTAURANT**

107. Plaintiff repeats and reiterates all of the allegations contained in preceding paragraphs as if set forth at length herein.

108. The NJLAD prohibits conduct that aids or abets unlawful discrimination and harassment.

109.    The Restaurant, Kim, Daniel, and John Does 1 through 10, at all times relevant hereto, were supervisors, managers, and/or decision makers with regards to Gentilella, Plaintiff, and their employment.

110.    The Restaurant, Kim, Daniel, and John Does 1 through 10, knowingly and substantially assisted themselves, each other, the Restaurant, and Gentilella, in their violations of the NJLAD.

111.    The Restaurant, Kim, Daniel, and John Does 1 through 10, knowingly and substantially assisted in harassing, discriminating against, and/or retaliating against Plaintiff.

112.    The Restaurant, Kim, Daniel, and John Does 1 through 10, failed to act so as to protect Plaintiff and/or failed to respond effectively to Plaintiff's complaints of discrimination and harassment.

113.    As a result of the conduct set forth herein, the Restaurant, Kim, Daniel, and John Does 1 through 10, are subject to individual liability pursuant to the NJLAD.

114.    As a direct and proximate result of the conduct described herein above, Plaintiff has suffered and is suffering considerable injury, including but not limited to severe emotional distress, diminished enjoyment of life; difficulty and inability to focus; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; will in the future be caused to suffer severe pain in mind; has endured interference with and will continue to endure interreference with engaging in her full normal daily activities.

115.    The actions of all Defendants, as alleged herein, caused, and contributed to Plaintiff's injuries, necessitating the need for future psychological care and treatment, resulting in loss of earnings and loss of future earning capacity, and was caused to sustain other great losses all contributing to her damage in dollar sum subject to proof at the time of trial.

**WHEREFORE**, Plaintiff respectfully requests Judgement in her favor and against all Defendants jointly, severally, and in the alternative, together with compensatory damages, non-economic compensatory damages, punitive damages, interest, costs of suit, attorneys' fees, enhanced attorneys' fees, and any other relief the Court deems equitable and just.

**COUNT IV**
**RETALIATION IN VIOLATION OF THE NEW JERSEY**
**LAW AGAINST DISCRIMINATION (N. J. S. A. 10:5-1 *et***
***seq.*) AGAINST DEFENDANTS KIM, DANIEL, AND**
**THE RESTAURANT**

116.    Plaintiff repeats and reiterates all of the allegations contained in preceding paragraphs as if set forth at length herein.

117.    Plaintiff engaged in activity protected by the NJLAD when she complained about unlawful discrimination, harassment, and sexual assault based on sex.

118.    Plaintiff engaged in activity protected by the NJLAD when she complained about the hostile work environment based on sex.

119.    Thereafter, Defendants took reprisals by refusing to address, mitigate, or otherwise halt the unlawful discrimination, harassment, sexual assault, and hostile work environment based on sex, forcing Plaintiff to continue to suffer discrimination as a condition of her employment, and ultimately fired her after she was sexually assaulted.

120.    All Defendants' actions were outrageous, and constituted wanton and reckless disregard for Plaintiff's health and wellbeing.

121.    As a result of the conduct set forth herein, the Restaurant, Kim, Daniel, and John Does 1 through 10, are subject to individual liability pursuant to the NJLAD.

122.    As a direct and proximate result of the conduct described herein above, Plaintiff has suffered and is suffering considerable injury, including but not limited to severe emotional distress, diminished enjoyment of life; difficulty and inability to focus; anxiety; depression;

humiliation; pain in mind and body; severe embarrassment; will in the future be caused to suffer severe pain in mind; has endured interference with and will continue to endure interreference with engaging in her full normal daily activities.

123. The actions of all Defendants, as alleged herein, caused, and contributed to Plaintiff's injuries, necessitating the need for future psychological care and treatment, resulting in loss of earnings and loss of future earning capacity, and was caused to sustain other great losses all contributing to her damage in dollar sum subject to proof at the time of trial.

**WHEREFORE**, Plaintiff respectfully requests Judgement in her favor and against all Defendants, jointly, severally, and in the alternative, together with compensatory damages, non-economic compensatory damages, punitive damages, interest, costs of suit, attorneys' fees, enhanced attorneys' fees, and any other relief the Court deems equitable and just.

**COUNT V**
**RETALIATION IN VIOLATION OF THE NEW JERSEY**
**CONCIENTIOUS EMPLOYEE PROTECTION ACT (N. J.**
**S. A. 34:10-1 *et seq.*) AGAINST ALL DEFENDANTS**

124. Plaintiff repeats and reiterates the allegations set forth in the preceding paragraphs as if full set forth herein.

125. The Conscientious Employee Protection Act prohibits retaliation against an employee because she discloses, or threatens to disclose to a supervisor an activity, policy, or practice of the employer that the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law in violation of N.J.S.A. § 34:19-3.

126. As outlined above, Defendants retaliated against Plaintiff for complaining about sexual harassment and hostile work environment.

127. Plaintiff reasonably believes this was illegal.

128.   Plaintiff's complaint was the basis for Defendants' adverse employment actions taken against Plaintiff, including but not limited to, refusing to investigate Plaintiff's complaint, refusing to stop the harassment, and terminating Plaintiff's employment.

**WHEREFORE**, Plaintiff respectfully requests Judgement in her favor and against all Defendants, jointly, severally, and in the alternative, together with compensatory damages, non-economic compensatory damages, punitive damages, interest, costs of suit, attorneys' fees, enhanced attorneys' fees, and any other relief the Court deems equitable and just.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff respectfully requests that this Court award the following relief:

A.   Find Defendants' conduct complained of herein to be in violation of Plaintiff's rights as secured by the NJLAD;

B.   Find Defendants' conduct complained of herein to be in violation of Plaintiff's rights as secured by CEPA;

C.   An award for emotional distress damages, economic damages, compensatory damages, statutory interest, and all other possible damages;

D.   An award for punitive damages;

E.   An award of costs and expenses of this action together with reasonable attorneys' and expert fees;

F.   Penalties available under applicable laws; and

G.   Such other further legal relief as this Court deems necessary, just, and proper.

## RESERVATION OF RIGHTS

Plaintiff reserves the right to file such specific amendments or additional claims as are applicable hereinafter to this action or as are subsequently discovered.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: March 28, 2026
New York, New York

**THE LAW OFFICES OF THOMAS ANDRYKOVITZ, P.C.**

By:     /s/ Thomas H. Andrykovitz
         Thomas H. Andrykovitz, Esq.
         260 Madison Avenue
         15th Floor
         New York, NY 10016
         (917) 719-0505
         thomas@thomashenrylaw.com

         *Attorneys for Plaintiff*

22